UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MATTHEW SCOTT NEWHOUSE,

        Plaintiff,

Case No. 1:07-CV-814

v.

Hon. Richard Alan Enslen

PIONEER STATE MUTUAL
INSURANCE CO., TRENDWAY
CORP. and CORPORATE BENEFITS
SERVICES OF AMERICA, INC.,

**OPINION**

        Defendants.
_____/

    Pending before this Court is Defendants Trendway Corporation and Corporate Benefit Services of America, Inc.'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.[1]  Oral argument is unnecessary in light of the briefing.  *See* W.D. Mich. L. Civ. R. 7.2(d).

**BACKGROUND**

    This suit was originally filed with the Circuit Court for Ottawa County, Michigan.  An Amended Complaint was filed with the Circuit Court on July 19, 2007 and asserts claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*  (Am. Compl., Counts II-V.)  Based on the federal jurisdiction over ERISA actions and pursuant to 28 U.S.C. § 1441(a)-(b), Defendants filed their timely Notice of Removal.  (Notice 2-3.)  No motion to remand has been made under 28 U.S.C. § 1447(c).

_____

[1] Defendants also filed an Amended Motion to Dismiss, which is nearly identical to the original, except that it corrects the omission of certain pages from the Benefit Plan exhibit.

Defendants' Motion requests dismissal and/or summary judgment as to Counts II-V of the Amended Complaint. (Defs.' Br. in Support 15.) No relief is sought concerning Count I–which Count seeks damages under a no-fault auto insurance policy against a non-movant, Defendant Pioneer State Mutual Insurance Company.

At issue in this suit is insurance coverage for medical bills, chiropractic and physical rehabilitation incurred by Plaintiff. (Am. Compl. ¶¶ 5 & 30.) Plaintiff was injured in an automobile accident on March 31, 2004 in the City of Holland. (*Id.*) Plaintiff has alleged in his Amended Complaint, and his Response, that the medical/chiropractic services at issue in this suit are a consequence of the accident.

Plaintiff began his employment with Defendant Trendway Corporation ("Trendway") on March 24, 2006.[2] (Robin Schalte Aff. ¶ 3.) From that date until July 12, 2007, Plaintiff submitted claims for health care services, some 39 of which were not paid because in the estimation of the Plan Administrator's staff those claims concerned chiropractic/medical services subject to a Pre-Existing Condition Limitation. (Schalte Aff. ¶¶ 5-6; Trendway Employee Ben. Plan 37.) During this time period, Defendant Corporate Benefit Services of America, Inc. ("Corporate Benefit") was the Plan Administrator for the covered benefits. This Plan provided the Plan Administrator with discretion to interpret the terms of the Plan, including all of the terms referenced herein. (Plan 85.)

Trendway's Pre-Existing Condition limitation states in pertinent part:

Expenses incurred in connection with a Pre-Existing Condition will not be considered eligible. A Pre-Existing Condition is defined as an illness or injury (whether physical or mental), regardless of cause, for which medical advice, diagnosis, care, or treatment was

---

[2] Plaintiff made a statement in his Response claiming was employed by Trendway at the time of the automobile accident. The Court does not consider this statement as part of the record because it is unverified and not contained in the administrative record.

2

recommended or received during the **three (3)** consecutive month period prior to the individual's Enrollment Date of coverage under this Plan. Pre-Existing Conditions will be covered after the end of **twelve (12)** consecutive months after the individual's Enrollment Date. The Pre-Existing Condition Limitation does not apply to:

* * * *

    5. The first $2,500 paid for eligible expenses with regards to a Pre-Existing Condition.

    6. An employee and/or dependent who was covered under a Qualified Health Plan which is replaced by this Plan, unless they have not satisfied the Pre-Existing Condition Limitation of the Qualified Health Plan in effect prior to the effective date of this Plan.

    The length of the Pre-Existing Condition limitation may be reduced or eliminated if a Covered Person has Creditable Coverage from another Qualified Health Plan, provided there was not a break in coverage of sixty-three (63) or more days. A Covered Person may request a Certificate of Creditable Coverage from their prior plan within twenty-four (24) months of losing coverage. Certificates of Creditable Coverage should be submitted to CBSA PERFORMAX, and appropriate credit for time covered will be applied to the pre-existing condition limitation. A HIPAA Determination letter will then be sent to the Covered Person, advising them [sic] of the credit applied to their [sic] pre-existing condition limitation.

The Plan must establish a procedure for Covered Persons to request and receive a certificate of Creditable Coverage. Any questions regarding obtaining a Certificate of Creditable Coverage or obtaining credit for additional past periods of coverage, please contact CBSA PERFORMAX'S Service Center . . . .

If all necessary information is not received by the Plan for determination of a pre-existing condition, or the Plan requests a Certificate of Creditable Coverage and that information is not received as requested, all additional claims relating to that condition will receive an Adverse Benefit Determination and will be denied until the necessary information is received. Please refer to the **General Provisions–Right of Review and Appeal** section for further details.

(Plan 37.)

    The "**General Provisions–Right of Review and Appeal** section" provides in pertinent part:

A Claimant has up to one hundred eighty (180) days to file an appeal of an Adverse Benefit Determination. As part of the appeal process, a Covered Person has the right to (a) review this Plan and other relevant documents, (b) argue against the denial in writing, and (c) have a representative act on behalf of the Covered Person in the appeal. . . .

3

> A Covered Person must follow the Right of Review and Appeal procedures listed above before initiating any legal actions. These are the Covered Person's administrative remedies, which must be exhausted before legal action may be pursued.
>
> If the Plan fails to provide procedures in compliance with the regulation, or the required procedures, the Claimant is deemed to have exhausted the administrative remedies and is free to pursue legal action on the basis that the Plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. . . .

(Plan 84-85.)

This Benefit Plan also provided that, "All decisions concerning the interpretation or the application of this Plan and its terms shall be at the discretion of the Plan Administrator." (*Id.* at 85.)

In this case, Plaintiff did file claims which received adverse benefit determinations due to the Pre-Existing Condition Limitation, but he did not appeal the denials of coverage after he also failed to file a Certificate of Creditable Coverage, which the Plan had requested in connection with the denied benefits. (*See* Schalte Aff. ¶¶ 4-5.)

Another provision of the Plan pertinent to Defendants' arguments is the auto-related injury exclusion. The exclusion provides in pertinent part:

> **BENEFITS ARE NOT PAYABLE UNDER THIS PLAN FOR INJURIES RECEIVED IN AN ACCIDENT INVOLVING A MOTOR VEHICLE (Michigan residents only).** It is the Covered Person's responsibility to obtain proper Motor Vehicle insurance that will give the Covered Person and their [sic] family medical benefits. If a covered Person fails to maintain Motor Vehicle insurance, the Covered Person will not have any medical expense covered for auto-related injuries. . . .

(Plan 73.) Plaintiff's Amended Complaint alleges that the medical treatment relates to the automobile accident on March 31, 2004. (Am. Compl. ¶¶ 5, 21, 39; Schalte Aff. ¶ 3.) Plaintiff also argues in his Response that he underwent spinal surgery on July 29, 2004 (shortly after the accident) and has had continual lower back pain since the accident. (Pl.'s Resp. 6.)

4

**APPLICABLE SUMMARY JUDGMENT STANDARDS**

Defendants' Motion is brought under both Rules 12 and 56. Because the record contains matters outside the pleadings which will not be excluded, the last sentence of Rule 12(b) dictates that the Rule 56 summary judgment standards govern the Motion. However, the ERISA case law explained below does not utilize the Rule 56(c) standards for determining summary judgment. Rather, the Court is to apply the controlling ERISA standard (in this case the "arbitrary and capricious standard") to the closed administrative record. In the instant case, it appears that Plaintiff has not completed the administrative review process and, as a result, there is only an incomplete administrative record (*i.e.,* Defendants' exhibits consisting of the Benefit Plan, the Affidavit of Robin Schalte verifying the failure to file an administrative appeal, and a computer log of the rejected claims).[3] The Court will treat these documents as the administrative record for the purposes of ERISA review.

While this analysis assumes the adequacy of discovery, a party cannot oppose summary judgment based on vague generalizations that discovery has been inadequate. Rather, under the language of Rule 56 and the case law of this Circuit, a party urging that discovery has been insufficient must file a specific affidavit establishing that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Rule 56(f); *Klepper v. First Am. Bank*, 916 F.2d 337, 343 (6th Cir. 1990); *Plott v. General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995). While Plaintiff argues in his Response that the Court should await further

---

[3]As noted *infra*, the *Wilkins* case cautioned against consideration of affidavits as opposed to the documents forming the administrative record. Nevertheless, the Court can discern no harm in considering the Schalte Affidavit which merely verified the attached computer log as part of Trendway's business records and stated that no administrative appeals were filed concerning the 39 unpaid medical claims.

5

discovery before resolving legal issues (Resp. 9.), he has not fulfilled the requirements of Rule 56(f). Because a proper Rule 56(f) affidavit has not been provided, the Court cannot accept the truth of Plaintiff's unverified argument and will proceed with the ERISA analysis. It is noted that the scope of the suggested discovery concerns Plaintiff's own exhaustion of administrative remedies–a subject which he was in a position to know and record. These circumstances do not favor an extension.

### **ERISA STANDARDS**

Summary judgment motions in ERISA cases are not controlled by the regular summary judgment standards. Rather, the district court must apply an "arbitrary and capricious" standard of review to an ERISA plan administrator/fiduciary's decision regarding benefits when the plan provides the administrator/fiduciary with discretionary authority to determine eligibility for benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 115 (1989). In the instant case, the Plan language provided this authority to Defendant Corporate Benefit. (Plan 75.) Thus, the decision of the administrator must be upheld provided that it was the result "of a deliberate, principled reasoning process and [was] supported by substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). This review is not abject, though, and "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). *See also Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001); *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996).

In conducting this review, the review is generally limited to the administrative record. Regular summary judgment standards are also not to be employed. The process was explained by the Sixth Circuit Court of Appeals in *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618-19

(6th Cir. 1998) (J. Gilman, concurring). The concurring opinion of Judge Gilman, which was joined by Judge Ryan, was the opinion of the Sixth Circuit as to the manner of administrative record review of ERISA benefit determinations.

>   Judge Gilman wrote:
>
>   1. As to the merits of the action, the district court should conduct . . . review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
>
>   2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
>
>   3. For the reasons set forth above, the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.

*Id.* at 619.

While it is clear from the above exposition that the Rule 56(c) standards do not apply to the legal analysis of an ERISA administrative record, *Wilkins* did not discuss whether the Rule 56(f) requirements should control extensions of time to conduct discovery for the purpose of mounting a procedural ERISA challenge. Rule 56(f) has been applied on several occasions by the Sixth Circuit in ERISA cases post-dating *Wilkins*. *See Metropolitan Life Ins. Co. v. Biggs*, 68 Fed. App. 644, 647-48 (6th Cir. June 26, 2003); *Helfrich v. Metal Container Corp.*, 52 Fed. App. 633, 634 (6th Cir. Aug. 6, 2002); *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1114 (6th Cir. Dec. 21, 2001); *see also Sweeney v. Allen*, 494 F. Supp. 2d 818, 825 (S.D. Ohio 2007). This aspect of the case law is logical from the standpoint that the administrative review mechanisms prescribed by

*Wilkins* are consistent with and presume other procedural mechanisms to resolve disputes about extensions of discovery. Since Rule 56(f) readily fills that vacuum and has been utilized by the Circuit after *Wilkins*, it will be applied in this suit.

### LEGAL ANALYSIS

Several of Defendants' legal arguments have been accepted by Plaintiff, who has stated that he is willing to stipulate to such relief. Plaintiff has stipulated in his Response that state breach of contract claims, apart from ERISA section 502 claims, are preempted. (Resp. 9.) This stipulation, which is proper and supported by the legal authorities cited in Defendants' Brief, has the effect of mandating dismissal of Counts III and V and the portions of Counts II and IV asserting state law claims. Plaintiff has also stipulated that he does not have a right to a jury trial as to the remaining ERISA claims in Counts II and IV, Resp.10, which stipulation is also proper and supported by the legal authorities cited in Defendants' Brief.

What remains is an analysis of Plaintiff's ERISA claims in light of the Benefit Plan language, the pleadings and the limited record provided by the parties. This analysis focuses on two issues: (1) whether Plaintiff has sufficiently exhausted available administrative remedies; and (2) whether Plaintiff's rights to benefit coverage are excluded under the auto-related exclusion. The first of these issues is primary for the reasons explained below.

ERISA does not contain an express statutory administrative exhaustion requirement. *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir. 1991) (citing *Makar v. Health Care Corp. of Mid-Atlantic,* 872 F.2d 80, 83 (4th Cir. 1989)). Nevertheless, ERISA does mandate that benefit plans include internal dispute resolution procedures. *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453-54 (6th Cir. 1991). The Sixth Circuit in *Baxter* has said that these dispute resolution procedures

8

should be regularly utilized by the parties as a pre-condition to suit. *Id.*  This holding is consistent with the holdings of other Circuits who have reached the same conclusion. *See Pethers v. Unum Life Ins. Co. of America*, 2005 WL 2206478, *2 (W.D. Mich. Sept. 12, 2005) (citing cases).  Therefore, Plaintiff's failure to follow those procedures as to these claims for benefits mandates dismissal of his claims against Defendants Trendway Corporation and Corporate Benefit Services of America, Inc.  Their Motion, therefore, will be granted.[4]

**STATE LAW CLAIMS**

Since the Court has decided to dismiss all of Plaintiff's federal claims, this leaves only Plaintiff's state law claims (contained in Count I), as to which the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  As to these claims, the Court must determine whether to retain, dismiss or remand them under § 1367(c)(3).  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

While the Court retains discretion to entertain the state law claims if justice so requires , the Court is of the opinion that it should leave them to resolution by the Michigan state courts.  This practice best serves the state courts' interests in comity and is most consistent with the long-standing practice of judicial restraint by the federal courts as to matters of state law.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988); *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th

---

[4]This resolution makes it unnecessary to address Defendants' argument concerning the automobile accident exclusion.  However, the Court notes for the record that this exclusion also supports the dismissal of the instant claims in light of the policy language and a similar holding of the Western District of Michigan in *Harmon v. Michigan Trowel Trades Health & Welfare Fund*, 1993 WL 836695, *2 n.4 (W.D. Mich. May 5, 1993) (citing *Allstate Ins. Co. v. Operating Eng'rs Local 324 Health Care Plan,* 742 F. Supp. 952, 955 (E.D. Mich. 1990)).

Cir. 2000); *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254. (6th Cir. 1996). In doing so, however, the Court will remand these claims to state court rather than dismiss them. Remand in this instance best supports the principles of economy, convenience, fairness and comity underlying pendent jurisdiction. *See Carnegie-Mellon*, 484 U.S. at 357; *Long*, 201 F.3d at 761 (following *Carnegie-Mellon*).

## **CONCLUSION**

For the reasons given, the pending federal claims will be dismissed and the remaining state law claims contained in Count I will be remanded for consideration by the Circuit Court for Ottawa County, Michigan.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>January 2, 2008 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |